OPINION
{¶ 1} This matter is before the Court on the Notice of Appeal of Wayne Lee Gordon, filed June 18, 2007. On February 20, 2007, a Montgomery County Grand Jury indicted Gordon for breaking and entering, in violation of R.C. 2911.13(A). On April 18, 2007, the Grand Jury indicted Gordon for theft (over $500), in violation of R.C. 2913.02(A)(1). A bench trial was conducted on April 27, 2007. The trial court found *Page 2 
Gordon not guilty of breaking and entering but found him guilty on the charge of fifth-degree felony theft. Gordon was sentenced on May 29, 2007 to a five year term of community control sanctions.
 {¶ 2} The events giving rise to this matter occurred on January 23, 2007, when Gordon and a juvenile passenger were driving around the east side of Dayton looking for abandoned "junk" to scrap for money. Gordon's passenger noticed a shed off of Linden Avenue that looked like it might have something of value inside.[1]
 {¶ 3} Gordon and his passenger pulled into the lot, parked, and then removed an ice cream machine and a milk dispenser from the shed. The two then loaded the items on the truck and drove away. Gordon testified that before he removed the two items from the shed, he knocked on the back door of the ice cream shop and received no response. Gordon alleged he next peered into the front windows, and concluded that the shop was abandoned.
 {¶ 4} Quatman, who was working in the attic of the ice cream shop, testified that he heard some noise coming from the back of the shop. Upon going outside to investigate, Quatman witnessed a truck leaving with his ice cream machine loaded in the back.
 {¶ 5} Quatman decided that the person who took the ice cream machine would likely attempt to sell it for its metal value at the nearby Franklin Iron and Metal. Quatman drove to this facility and alerted staff that someone might try to scrap his property. Gordon soon arrived with the ice cream machine, milk dispenser, and a *Page 3 
bucket of copper and other components that had been removed from the machines. The Dayton police were called and Gordon was arrested. Gordon admitted to taking the property but stated that he thought the items were abandoned.
 {¶ 6} At trial, the State called Quatman, who testified that he used the ice cream machine from the shed for its parts, mostly for the compressors and circuit boards. He testified that because the copper had been removed from the compressor of the ice cream machine, the compressor was opened up to the elements and "compromised." Quatman further testified that he owned the ice cream shop for seventeen years, that he had an education in electronics from the University of Dayton, that he had experience with purchasing ice cream machines, and that he attended ice cream trade shows. Additionally, Quatman testified that he did repair work on his ice cream machines, that he had had a compressor replaced before, that he had purchased a compressor ten years prior for one thousand dollars ($1000), and that the ice cream machine removed by Gordon was the same model, and had identical compressors, as the machine currently used in his ice cream shop. After hearing this testimony the trial court allowed Quatman to testify that the replacement cost of the compressor was nine hundred dollars ($900).
 {¶ 7} On cross examination, Quatman admitted that the shed was not in good shape, and that its roof had partially caved in at some time. He revealed that upon inspecting the machines a week or two prior to the incident involving Gordon, he found that water had leaked into the hopper of the ice cream machine. Quatman also testified that the machines taken from the shed, including the parts, had not been turned on or tested in the past three years. *Page 4 
 {¶ 8} When Gordon took the stand he testified that he observed no Freon discharge when he cut the copper line of the compressor, suggesting that the compressor was inoperable prior to the time it was removed from the shed.
 {¶ 9} Gordon's Sole Assignment of Error is as follows:
 {¶ 10} "THE EVIDENCE PRESENTED AT TRIAL WAS LEGALLY INSUFFICIENT TO SUPPORT A CONVICTION OF THEFT OVER FIVE HUNDRED DOLLARS."
 {¶ 11} When we review the sufficiency of the evidence to support a conviction, we:
 {¶ 12} "examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v.Jenks (1991), 61 Ohio St.3d 259, 259-60, 574 N.E.2d 492, paragraph two of the syllabus.
 {¶ 13} Gordon first argues that the trial court erred in admitting Quatman's testimony regarding the replacement value of the compressor. He argues that Quatman's testimony in this regard was inadmissible hearsay. We disagree. Although the general rule is that one must be qualified as an expert to testify as to value, an "owner is permitted to testify concerning the value of his property without being qualified as an expert, because he is presumed to be familiar with it from having purchased or dealt with it." Tokles Son, Inc. v. Midwestern IndemnityCo. (1992), 65 Ohio St.3d 621, 605 N.E.2d 936, at paragraph two of the syllabus, citing Bishop v. East *Page 5 Ohio Gas Co. (1944), 143 Ohio St. 541, 56 N.E.2d 164. Quatman testified as to his years of involvement with the ice cream business, with ice cream machines, and with purchasing and maintaining those machines and their parts. On that basis we conclude that Quatman was qualified to give his opinion as to the replacement value of his compressor.
 {¶ 14} Gordon next argues that the trial court erred in using replacement value in order to value the amount of the property or services involved in the theft, in accordance with R.C. 2913.61(D)(2) which states in pertinent part:
 {¶ 15} "(D) The following criteria shall be used in determining the value of property or services involved in a theft offense:
 {¶ 16} "(2) The value of personal effects and household goods, and of materials, supplies, equipment, and fixtures used in the profession, business, trade, occupation, or avocation of its owner, which property is not covered under division (D)(1) of this section and which retains substantial utility for its purpose regardless of its age or condition, is the cost of replacing the property with new property of like kind and quality."
 {¶ 17} Gordon argues that because insufficient evidence was adduced at trial to show that the ice cream machine retained "substantial utility for its purpose" the trial court should have applied R.C. 2913.61(D)(3). (D)(3) is a catch-all provision for any items not covered under (D)(1) (pertaining to heirlooms, museum pieces, or other items of unusual worth) or (D)(2). R.C. 2913.61(D)(3) uses fair market value to determine the value of property.
 {¶ 18} We find the trial court correctly applied R.C. 2913.61(D)(2). Quatman *Page 6 
testified that he used the ice cream machine for its parts. As long as there was sufficient testimony supporting the inference that the parts were in a usable condition, the machine retained its substantial utility to Quatman. There was some suggestion at trial that the compressor might not work because the ice cream machine was exposed to the elements. Gordon testified that no Freon escaped when he cut out the copper. The trial court however credited Quatman's testimony, that he felt that the parts were likely still usable. We find no error in this determination. Credibility determinations by a trial court are afforded substantial deference. "[T]he trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony."Seasons Coal Co. v. City of Cleveland (1984), 10 Ohio St.3d 77, 80,461 N.E.2d 1273. Quatman was more familiar with his machines than anyone else who testified. Additionally, Quatman testified that the ice cream machine in the shed was the same model as the machine in his ice cream shop. This supports his contention that the machine in the shed retained its utility to him for its spare parts in the on-going operation of his ice cream business.
 {¶ 19} In conclusion, we hold that the trial court properly admitted Quatman's opinion testimony as to the replacement value of the compressor and that the trial court properly applied R.C. 2913.61(D)(2) in determining the value of the stolen property.
 {¶ 20} For the foregoing reasons, Gordon's sole assignment of error is overruled.
 {¶ 21} Gordon's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.
BROGAN, J. and FAIN, J., concur.
Copies mailed to:
Michele D. Phipps
Christopher W. Thompson
Hon. Timothy O'Connell
[1] The shed is located in the parking lot behind the Nice and Sweet Ice Cream Shop, located at 1235 Linden Avenue, Dayton Ohio. It is used for storage by the owner of the ice cream shop, David Quatman. *Page 1